IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

Carlos Eundra Brooks,                    :
                                         :
     Plaintiff,                          :
                                         :
     v.                                  :    CIVIL ACTION NO.
                                         :    1:12-cv-01544-JOF
Nicole Lambert, *individually*, et al.,   :
                                         :
     Defendants.                         :
                                         :

## ORDER

This matter is before the court on Defendants' motion to dismiss [7].

## I.   Background

### A.   Procedural History and Facts Alleged in Complaint

Pursuant to 42 U.S.C. § 1983, Plaintiff, Carlos Eundra Brooks, filed suit against Defendants City of Atlanta, Nicole Lambert, Christopher Thornton, John E. Miller, Bradley Etterle, and Gregory Wray, alleging various constitutional claims and state law causes of action arising of out Plaintiff's arrest on May 3, 2010.

In his complaint, Plaintiff alleges that "Defendant Officers" which includes Defendant Lambert, Defendant Thornton, Defendant Miller, Defendant Etterle, and Defendant Wray, all Atlanta Police Officers, came to the Sanabella Restaurant in the early morning hours of May 3, 2010. *See* Cmplt., ¶ 12. Defendant Thornton filed an incident report for the Atlanta Police Department, but Plaintiff asserts that Defendant Thornton's

statement: "Through the front red door window, I observed several patrons inside actively consuming alcoholic beverages as well as eating" is "untruthful." *Id.*, ¶ 13. Plaintiff asserts that the only thing that can be viewed through the front window of the restaurant is the rear wall of the small vestibule. *Id.* Plaintiff asserts that despite not being able to see through the window to the interior of the establishment, "Defendant Officers" summoned the Atlanta Fire Rescue to "force unlawful entry into the restaurant." *Id.* At the direction of "Defendant Officers," Atlanta Fire Rescue pried open the locked door of the restaurant with a crow bar and hammer. *Id.*, ¶ 14.

Plaintiff was an employee of the restaurant and sitting in the restaurant with "non-patron" occupants. *Id.*, ¶ 15. "Defendant Officers" ordered the occupants to lie on the ground, demanded identification, and "ran" the identification without probable cause. *Id.* "Defendant Officers" arrested and jailed Plaintiff, charging him with Obstruction of a Law Enforcement Officer in violation of O.C.G.A. § 16-10-24(a) and Sale of Alcohol on Sunday, in violation of O.C.G.A. § 3-3-7. *Id.*, ¶ 16. Plaintiff alleges the officers did not have probable cause for these charges. *Id.*, ¶ 17. Plaintiff states "Defendant Officers" did not witness Plaintiff serving alcohol. *Id.*, ¶ 18. Plaintiff has not been prosecuted for these charges. *Id.*, ¶ 22.

In his incident report, Defendant Thornton wrote: "I inquired the 'clean up man' [sic] if the owner (Mr. Carlos Brooks) was inside the bar/club. Though the 'clean up man'

couldn't confirm. [sic]."  *Id.*, ¶ 23.   Plaintiff asserts this statement demonstrates that Defendant Thornton had "specific intent" to cause Plaintiff harm.  *Id.*, ¶ 24.

Plaintiff avers that he is not the owner or licensee of The Sanabella.  *Id.*, ¶ 25. Plaintiff states that Defendant Thornton and "other officers" were permitted by the Atlanta Police Department and the City of Atlanta to "engage in a continued pattern of harassment of Plaintiff and The Sanabella over an extended period of time."  *Id.*, ¶ 26.

Plaintiff alleges causes of action of "unreasonable seizure."  *Id.*, ¶¶ 27-30.  Plaintiff asserts that this seizure was conducted "pursuant to an Atlanta Police Department policy, practice and/or custom with the force of law to conduct warrantless raids of business establishments and arrest employees on the premises without probable cause to believe that a crime had been committed."  *Id.*, ¶ 31.   Plaintiff "incorporates by reference" an investigative report conducted by the law firm of Greenberg Traurig regarding the Atlanta Police Department raid on The Eagle Bar.  *Id.*

Plaintiff also alleges "false imprisonment & arrest without probable cause."  *Id.*, ¶¶ 32-34.  Plaintiff contends "Defendant Officers" acted with malice in falsely imprisoning and arresting Plaintiff.  *Id.*, ¶ 34.   Finally, Plaintiff alleges battery.  *Id.*, ¶¶ 35-37.

In his response to Defendants' motion to dismiss, Plaintiff attached the Incident Report referred to in his complaint.  This report indicates that at 2:28 a.m. on Monday, May 3, 2010, Officer Thornton conducted a traffic stop several blocks from The Sanabella.  The

driver pulled over in that traffic stop informed Officer Thornton that Sanabella was "still in operation and selling alcoholic beverages." *See* Pl's Resp., Docket Entry [8], Exh. A, at 4. Officer Thornton and "several additional officers" responded to the Sanabella. *Id.* Sergeant Lambert supervised the incident. *Id.*

In observing the bar, Officer Thornton saw a male patron leave the business. *Id.* He also noticed that the neon "OPEN" sign was still lit. *Id.* The "clean up man" was still working at cleaning the area around the club. *Id.* "Several vehicles were parked in front of the business, as well as patrons standing on the property." *Id.* At 3:12 a.m., Officer Thornton conducted a "business patrol" of the club and found the door locked. "Through the front red door window, I observed several patrons inside actively consuming alcoholic beverages as well as eating. I BANGED on the door several times advising "ATLANTA POLICE." However, no one would respond to the door." *Id.*

Officer Thornton advised Sergeant Lambert of the situation and requested additional units to do a force entry, if necessary. *Id.* Officer Thornton indicated that he knocked again and no one would come to the door. *Id.* He also stated that the "clean up man" tried to get in the front door, knocking several times and "viewing his face" through the front red door window, but no one came to the door. *Id.* No one left the club and additional officers knocked on the front door with no answer. *Id.* Officer Thornton then called Atlanta Fire and Rescue who forced entry into the bar. *Id.*

4

Officer Thornton then writes:

> Inside the bar/club it was in plain view cans of malt alcoholic beverages (empty and full), and cups of alcoholic beverages being held by the patrons. There were at least (10) ten patrons inside the bar/club.  Behind the bar counter Mr. Brooks was located.  All patrons of the location were detained and Mr. Brooks was taken into custody.  Mr. Brooks exclaimed the patrons of the bar/club were his "kinfolk" and were allowed to be participating.  In addition, Mr. Brooks exclaimed how the bar/club has been closed.  Mr. Brooks was inquired of his "kinfolk" but could not actively identify every person as family.

*Id.*  Further,

> Mr. Brooks was taken into custody and advised of his charges and rights.  During the course with Mr. Brooks (he) admitted the patrons advised him the police were at the door.  However, he advised the patrons to pay no regard to the police in which the "OPEN" sign and lights were turned off.  In addition, Mr. Brooks continued to admit (he) was aware of the business in operation after hours where he paid a band ($300.00) three hundred dollars to perform.  Mr. Brooks himself was highly intoxicated.

*Id.*  Officer Thornton stated that the patrons were released and the club was turned over to Mr. Lester Pippins.  Plaintiff was then charged.

Plaintiff also attaches to his response a copy of the Atlanta Police Department call for service which indicates that a call was made to dispatch at 3:12 a.m. *See* Pl's Resp., Docket Entry [8], Exh. B, at 1.

**B.     Contentions**

In their motion to dismiss, Defendants argue that Plaintiff has not alleged sufficient facts to show that the City of Atlanta is liable under a theory of municipal liability for a

AO 72A
(Rev.8/82)

custom or policy of warrantless raids on business establishments. Defendants further argue that the individual defendants are entitled to qualified immunity because Plaintiff has not sufficiently alleged a constitutional violation. Defendants contend that Defendant Thornton had arguable probable cause to arrest Plaintiff for after-hours sale of alcohol. In the alternative, Defendants aver that even if Plaintiff had alleged a constitutional violation, Defendants would be entitled to qualified immunity because there is no clearly established law which demonstrated that Defendants actions were improper. With respect to Plaintiff's state law claims, Defendants assert that the City of Atlanta is entitled to sovereign immunity and the Defendants officers to official immunity.

Plaintiff responds that Defendants had no probable cause (arguable or otherwise) to arrest Plaintiff for either sale of alcohol on Sunday or obstruction of a law enforcement officer. Plaintiff contends that Defendant Thornton could not have personally observed any activity inside the restaurant prior to breaking down the doors because the window in the door does not allow a view into the restaurant. As such, Defendant Thornton's only basis for probable cause was the motorist that he has previously pulled over. Plaintiff further states that the language of the statutes and the Fourth Amendment provided Defendant Thornton with the clearly established law which demonstrates that he is not entitled to qualified immunity for his unconstitutional actions. Plaintiff contends that the City of

6

Atlanta is liable on the basis of "supervisory liability" and that Defendant Lambert was a "policy-maker" at the time of the incident.

## II.   Discussion

As an initial matter, the court notes that in response to Defendants' motion to dismiss Plaintiff's counsel offers additional facts that have not been alleged in the complaint. The court may not consider these facts on Defendants' motion to dismiss.[1]  The court may consider the Incident Report filed by Defendant Thornton because this document is referenced in Plaintiff's complaint and attached to Plaintiff's response to Defendants' motion to dismiss.  Furthermore, no party disputes the authenticity of the Incident Report. *See*, *e.g.*, *Horlsey v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002); *Harris v. Ivax Corp.*, 182 F.3d 799, 802 n.2 (11th Cir. 1999); *Brooks v. Blue Cross & Blue Shield*, 116 F.3d 1364, 1369 (11th Cir. 1997).

### A.   "Defendant Officers"

_____

[1]For example, in his response, Plaintiff's counsel avers that Plaintiff "denies any knowledge of police presence outside of the Restaurant prior to the commencement of the raid." *See* Docket Entry [8], at 3.

Plaintiff's counsel also argues that "Defendant Lambert, a policymaker, was present and presumptively heard over radio communications that Defendant Thornton summoned Atlanta Fire and Rescue to force entry into the premises before observing any activity inside of the restaurant.  Even when faced with Defendant Thornton's hasty decision-making, Defendant Lambert, a Sergeant, at no time ordered Defendant Thornton and others to act lawfully." *Id.* at 17.  These speculative allegations do not appear in Plaintiff's complaint.

Plaintiff's counsel refers to "previous incidents" between Defendant Thornton and the Sanabella Restaurant where Thornton expressed a desire to "shut down" the restaurant. *Id.* at 18. These "previous incidents" are not alleged in Plaintiff's complaint.

AO 72A
(Rev.8/82)

Plaintiff admits that Defendants Miller and Wray have not been served with the complaint.  As the complaint was filed in May 2012, over 10 months ago, the court DISMISSES WITHOUT PREJUDICE Defendants Miller and Wary for failure to serve.

Plaintiff repeatedly refers to "Defendant Officers" throughout his complaint, but he does not identify what specific actions any of these officers took on the evening in question that violated his constitutional rights.  Plaintiff references Defendant Thornton who issued the arrest warrant and filed the incident report.  However, Plaintiff makes no individual reference to any act that Defendant Etterle took.  Because Plaintiff has made no allegations against Defendant Etterle, the court dismisses Plaintiff's complaint against him.

Plaintiff makes only one reference to Defendant Lambert in his complaint.  Plaintiff alleges Defendant Lambert is a Sergeant in the Atlanta Police Department sued in her individual capacity.  *See* Cmplt., ¶ 5.  It appears that Plaintiff is attempting to hold Defendant Lambert liable under a theory of supervisor liability.  It is axiomatic that under section 1983, a supervisor is not responsible for the unconstitutional acts of his subordinate on the basis of respondeat superior or vicarious liability.  *See Cottone v. Jenne*, 326 F.3d 1352, 1360-61 (11th Cir. 2003); *Gonzalez v. Reno*, 325 F.3d 1228, 1234 (11th Cir. 2003).  A supervisor can be held liable if the supervisor personally participates in the alleged constitutional violation or if there is a causal connection between the alleged violation and the actions of the supervisor, such as a history of widespread abuse which would put a

8

supervisor on notice of a subordinate's potential for problems or where the supervisor's customs or policies could arguably have led to the alleged violation. *Gonzalez*, 325 F.3d at 1234-35. Plaintiff makes no such allegations in his complaint. From the allegations in Plaintiff's complaint, it does not even appear that Defendant Lambert was present on the scene on the night in question. Nor are there any allegations that Defendant Lambert should have been aware of any particular propensities on the part of any Defendant that would show that individual's potential for allegedly committing constitutional violations.

For these reasons, the court DISMISSES WITH PREJUDICE Defendants Lambert and Etterle.

### B.   Municipal Liability

Plaintiff argues that the City of Atlanta should be held liable because Defendant Lambert was a "policy-maker" who demonstrated "deliberate indifference" in her supervision of the raid. Plaintiff misapprehends the manner in which a municipality can be held liable under § 1983. As an initial matter, whether Defendant Lambert was a "policy-maker" is irrelevant to municipal liability. It is true that one manner in which municipal liability may attach is through the actions of a ***final*** policymaker, but Plaintiff has made no such allegations concerning Defendant Lambert. *See, e.g.*, *Quinn v. Monroe County*, 330 F.3d 1320 (11th Cir. 2003) (final policymaking authority does not vest in official whose decisions subject to meaningful review); *Church v. City of Huntsville*, 30 F.3d 1332, 1342

9

(11th Cir. 1994) (only municipal officers who have final policymaking authority subject municipality to § 1983 liability).

Plaintiff next argues a theory of "supervisor liability." However, "supervisor liability" – to the extent such a theory exists – would govern whether Defendant Lambert could be held liable, ***not*** whether the City of Atlanta is liable. The court discussed above why Plaintiff had not alleged sufficient facts to hold Defendant Lambert liable under a theory of supervisor liability. It is true that in *Monell v. Department of Social Services*, 436 U.S. 658 (1978), the Supreme Court held that municipalities (and other local government entities) are "persons" within the meaning of 42 U.S.C. § 1983. The Court, however, consistently has declined to hold municipalities liable under a theory of respondeat superior. *See, e.g., Pembaur v. Cincinnati*, 475 U.S. 469, 479 (1986). Rather, a plaintiff must demonstrate a municipal "policy" or "custom" that caused the plaintiff's injury in order to establish a municipality's liability. *See, e.g., Canton v. Harris*, 489 U.S. 378, 389 (1989). The plaintiff must also show that "through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged." *Board of Comm'rs v. Brown*, 520 U.S. 397, 404 (1997).

In *Wayne v. Jarvis*, 197 F.3d 1098 (11th Cir. 1999), *overruled on other grounds, Manders v. Lee*, 338 F.3d 1304 (11th Cir. 2003), the court further explicated the standard for establishing municipal liability. "[A] plaintiff seeking to impose liability on a

10

municipality under § 1983 [must] identify a municipal 'policy' or 'custom' that caused the plaintiff's injury." *Id.* at 1105 (quotations and citations omitted). "A custom is a practice that is so settled and permanent that it takes on the force of law." *Id.* "To establish a policy or custom, it is generally necessary to show a persistent and wide-spread practice. Moreover, actual or constructive knowledge of such customs must be attributed to the governing body of the municipality." *Id.* "A plaintiff must show that the municipal action was taken with the requisite degree of culpability, i.e., that the municipal action was taken with 'deliberate indifference' to its known or obvious consequences." *Davis v. DeKalb County Sch. Dist.*, 233 F.3d 1367, 1375-76 (11th Cir. 2000).

Here, the only allegation Plaintiff makes in his complaint that relates to municipal liability is a reference to the raid of the Atlanta Police Department on the Atlanta Eagle bar as described in a report commissioned by the City of Atlanta and prepared by the law firm of Greenberg Traurig.[2] The court finds the Atlanta Eagle bar incident to be inapposite. There, the police department had planned a raid of the establishment and the unconstitutional violations related to the manner in which police treated the patrons at the

---

[2]Plaintiff also refers to *Lopez v. City of Atlanta*, Civil Action No. 1:11-CV-3055-JOF, where an individual who worked as a bartender at the Atlanta Eagle restaurant sued the City of Atlanta and certain individual police officers alleging constitutional violations arising out of a police department raid on the Atlanta Eagle restaurant. In an order granting the defendants' motion to dismiss, the court discussed the Greenberg Traurig investigative report. The court noted that the investigative report found that while the officers' actions violated the rights of the patrons of the Atlanta Eagle restaurant, there was not evidence that the officers violated the rights of the employees of the bar. *See* Docket Entry [18].

11

bar and not the employees.  Here, Plaintiff's allegation shows that Defendant Thornton arrived at the Sanabella restaurant as a result of information he received when pulling over a driver for a traffic stop.  The court discussed below the constitutionality of Defendant Thornton's actions, but there is nothing in the allegations in Plaintiff's complaint which would link Defendant Thornton's actions to any policy or custom of the City of Atlanta Police Department.  As such, the court determines there is no theory upon which the City of Atlanta can be held liable.

For these reasons, the court GRANTS Defendants' motion to dismiss with respect to the City of Atlanta.

## C.    Qualified Immunity

Before considering whether Defendant Thornton is entitled to qualified immunity, the court notes that Plaintiff does not directly challenge the search of the Sanabella Restaurant in his complaint.  Rather, Plaintiff alleges only that his "seizure" was unconstitutional.  Even if Plaintiff's complaint could be read to include a challenge to Defendant Thornton's entry into the Sanabella, the court would conclude that Plaintiff does not have standing to raise this issue.  Plaintiff makes it clear in the complaint that he is not the owner or operator of the Sanabella and is simply an employee.  The Fourth Amendment bars unreasonable searches and seizures.[3]  In order to assert a violation of the Fourth

---

[3] The Fourth Amendment:

The right of the people to be secure in their persons, houses, papers, and

Amendment, a defendant must establish that he or she had a legitimate expectation of privacy in the place that was searched. *See Rakas v. Illinois,* 439 U.S. 128 (1978); *United States v. Brazel,* 102 F.3d 1120, 1147-48 (11th Cir.1997). Thus, a person has standing to raise this "right of the people" only if there has been a violation "as to him," personally. *See*, *e.g.*, *Mancusi v. DeForte*, 392 U.S. 364, 367 (1968).

A defendant's legitimate expectation of privacy exists when a he or she can show a subjective expectation of privacy that " 'society is prepared to recognize as "reasonable." " ' *United States v. Ford,* 34 F.3d 992, 995 (11th Cir.1994) (quoting *Katz v. United States,* 389 U.S. 347, 361, 88 S.Ct. 507, 516, 19 L.Ed.2d 576 (1967) (Harlan, J., concurring)); *see also United States v. Robinson,* 62 F.3d 1328, 1328 (11th Cir.1995). " 'Property used for commercial purposes is treated differently for Fourth Amendment purposes than residential property." ' *Chaves,* 169 F.3d at 691 (quoting *Minnesota v. Carter,* 525 U.S. 83, 90, 119 S.Ct. 469, 142 L.Ed.2d 373 (1998)). In fact, the " 'expectation of privacy in commercial premises ... is ... less than, a similar expectation in an individual's home." ' *Id.* (quoting *New York v. Burger,* 482 U.S. 691, 700, 107 S.Ct. 2636, 96 L.Ed.2d 601 (1987)).  Plaintiff has not articulated any basis upon which he (an employee) could claim a reasonable expectation

―――――――――――――

effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.
U.S. Const. Amend. IV.

of privacy as to the interior of a bar/restaurant.  Plaintiff is not contending that Defendant Thorton went into any office of the restaurant or bar, or that he entered any kind of employee locker room, or restroom area.  There is no contention that any personal items of Plaintiff's were sought by Defendant Thornton or that the area was generally under Plaintiff's control.

For this reason, the court does not delve into whether Defendant Thornton's decision to call Atlanta Fire & Rescue to break open the door of the restaurant in any manner violated the Fourth Amendment.[4]

The court now turns to Plaintiff's allegation that Defendant Thornton "seized" him in violation of the Fourth Amendment by arresting him for obstruction of a law enforcement officer and serving alcohol on Sundays.  Defendants respond that Defendant Thornton is entitled to qualified immunity as to this cause of action.  To be entitled to qualified immunity, a public officer must prove that he was acting within the scope of his

---

[4]It is axiomatic that under the Fourth Amendment, without a warrant, law enforcement may not enter a home or commercial property without consent or the existence of exigent circumstances.  *See*, *e.g.*, *Swint v. City of Wadley*, 51 F.3d 988, 995-96 (11th Cir. 1995) (citing *Donovan v. Dewey*, 452 U.S. 594, 598 n.6 (1981)).  Defendants have not made an argument as to either of these exceptions and the facts as alleged in Plaintiff's complaint do not lend themselves to either circumstance except potentially due to the circumstances of serving alcohol, the evidence of wrongdoing would disappear as the drinks were being consumed.  Because Defendants do not raise this defense or the defense of "warrantless administrative inspections," the court does not further consider these issues.  *See also Swint v. City of Wadley*, 51 F.3d 988, 995-96 (11th Cir. 1995) (discussing "warrantless administrative inspections").

14

discretionary authority at the relevant time. *See*, *e.g.*, *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002). Here, making arrests clearly falls within the scope of Defendant Thornton's authority as a police officer.

Once the officer shows discretionary authority, the burden shifts to the plaintiff to show that qualified immunity is not appropriate. *Id.* The "threshold inquiry" is whether the plaintiff's allegations, if true, establish a constitutional violation. *See*, *e.g.*, *Penley v. Eslinger*, 605 F.3d 843, 849 (11th Cir. 2010). (In *Pearson v. Callahan*, 555 U.S. 223, 236-42 (2009), the Supreme Court held that this order of inquiry was no longer mandatory.) Next, if a plaintiff can show a constitutional violation occurred, the court must determine whether the constitutional right was clearly established at the time of the incident. *See*, *e.g.*, *Mercado v. City of Orlando*, 407 F.3d 1152, 1156-57 (11th Cir. 2005).

An arrest is supported by probable cause when it is objectively reasonable based on the totality of the circumstances. *See*, *e.g.*, *Rankin v. Evans*, 133 F.3d 1425, 1435 (11th Cir. 1998). "This standard is met when the facts and circumstances within the officer's knowledge, of which he or she has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Id.* Furthermore, an officer's "subjective reason for making the arrest need not be in the criminal offense as to which the known facts provide probable cause." *See*, *e.g.*, *Devenpeck v. Alford*, 543 U.S. 126, 153 (2004).

Moreover, if Defendant Thornton had arguable probable cause to arrest Plaintiff for any offense, he is entitled to qualified immunity. *See*, *e.g.*, *Durruthy v. Pastor*, 351 F.3d 1080, 1090 n.6 (11th Cir. 2003). Arguable probable cause exists if "reasonable officers in the same circumstances and possessing the same knowledge as the Defendants could have believed that probable cause existed." *See Swint v. City of Wadley, Ala.*, 51 F.3d 988, 996 (11th Cir. 1995).

Defendant Thornton's incident report contains no explanation for the charge of obstruction of a law enforcement officer in violation of O.C.G.A. § 16-10-24(a) which provides:

> a person who knowingly and willfully obstructs or hinders any law enforcement officer in the lawful discharge of his official duties is guilty of a misdemeanor.

*Id.* It is possible that the basis for this charge was the refusal of the individuals inside the bar to respond to the knocks of the police officers. However, it is not clear that this would be sufficient under Georgia law to constitute misdemeanor obstruction. *See*, *e.g.*, *Beckom v. State*, 286 Ga. App. 38 (2007) ("Refusal to answer knocking at one's front door, ringing of the door bell, or ringing of the phone, without more, does not constitute obstruction of the police, even if it is the police doing the knocking and ringing."). Because Defendants, themselves, have not attempted to argue they had sufficient probable cause to arrest Plaintiff

16

for this misdemeanor, the court presumes that Defendant Thornton did not have arguable

probable cause for such an arrest.

> Under O.C.G.A. § 3-3-7,
>
> (2) Alcoholic beverages may be sold on Sundays between the hours of 12:30 P.M. and 12:00 Midnight in public stadiums, coliseums, and auditoriums with a seating capacity in excess of 3,500 persons and in eating establishments. As used in this paragraph, the term "eating establishment" means an establishment which is licensed to sell distilled spirits, malt beverages, or wines and which derives at least 50 percent of its total annual gross food and beverage sales from the sale of prepared meals or food.

*Id.* Here, in his incident report, Defendant Thornton articulates the following facts to

support his violation of the Sunday sale of alcohol claim: when he arrived at the club at 3:15

a.m., he witnessed patrons standing outside the club; he saw a patron exit the club, the neon

"open" sign for the club was still lit, the "clean-up" man was still working the parking lot,

when he entered the club, he saw ten patrons, he also viewed cans of malt alcoholic

beverages and cups with alcohol being held by patrons, Plaintiff was behind the bar,

although Plaintiff told Defendant Thornton the bar was closed and it was only family

members inside, Plaintiff could not identify all of the patrons in the bar, Plaintiff told

Defendant Thornton he knew that the bar was in operation after hours and had hired a band

for $300, and Plaintiff was highly intoxicated.

Although Plaintiff states that Defendant Thornton never witnessed him dispensing

alcohol and there is a dispute of fact as to whether Defendant Thornton could have seen

17

through the door window to observe patrons "actively" consuming alcohol, the court finds the undisputed allegations outlined above sufficient to establish arguable probable cause for an arrest for violation of alcohol sales on Sunday. Because Defendant Thornton had arguable probable cause to make the arrest, he is entitled to qualified immunity.

Because the court finds that Plaintiff has not alleged facts to sustain any of his section 1983 claims, the court concludes that Plaintiff's derivative claim for punitive damages must also be dismissed.  The court declines to exercise supplemental jurisdiction over Plaintiff's state law claims.

## III.  Conclusion

The Clerk of the Court is DIRECTED to DISMISS WITHOUT PREJUDICE Defendants Miller and Wary.

The Clerk of the Court is DIRECTED to DISMISS WITH PREJUDICE Defendant City of Atlanta, Defendant Lambert, and Defendant Etterle.

The court GRANTS Defendants' motion to dismiss [7].  The Clerk of the Court is DIRECTED to DISMISS Plaintiff's federal claims WITH PREJUDICE and DISMISS

18

Plaintiff's state law claims WITHOUT PREJUDICE.  The Clerk of the Court is DIRECTED

to CLOSE this CASE.

       **IT IS SO ORDERED** this 25th day of September, 2013.

                    S/  J. Owen Forrester
                    J. OWEN FORRESTER
                    SENIOR UNITED STATES DISTRICT JUDGE

AO 72A
(Rev.8/82)